ORVILLE D. LAMBARD, Appellant.

*In re,* Collateral Inheritance Tax.

Kennebec.　　Opinion March 11, 1896.

*Tax.　Collateral Inheritance.　Retroactive Laws.　Stat. 1893, c. 146.*

The statute of 1893, c. 146, does not apply to property collaterally devised by a testator who died before the act took effect, but whose will was not filed in the probate court until after the act took effect.

Statutes are not to have a retroactive operation unless the legislature has explicitly declared that they shall have that effect; or such intention clearly appears by necessary implication from the terms employed considered in relation to the subject matter, the present state of the law, the object sought to be accomplished, and the effect upon existing rights and obligations.

ON EXCEPTIONS.

This was an appeal by Orville D. Lambard from the probate court, Kennebec County, heard by the court below with the right to except.

Julia E. Johnson, sister of the appellant, who died in Paris, France, October 25, 1892, left a will which was filed in the probate court for Kennebec County, June 5, 1893, and under which will certain real estate in Augusta was devised to her brother, the appellant.

The judge of probate decreed that this property was taxable under the statute entitled " An act to tax collateral inheritances," and ordered the tax to be paid into the State treasury by the executor. An appeal having been taken from this decree to this court sitting as the Supreme Probate Court, the presiding justice ruled that the act of the legislature referred to was not intended to

have and does not have a retroactive effect so as to apply to any property which passed by the will of a testator who died prior to February 9th, 1893 ; and that the property devised to the appellant by the will of Julia E. Johnson was not subject to a tax under the act aforesaid, and directed that the entry be, "decree of the probate court reversed in whole."

To this ruling the county attorney, for the State, excepted.

*Lemuel Titcomb*, for appellant.

*George W. Heselton*, County Attorney, for the State.

This law is not retrospective, and only retroactive as regards taxing estates which had not commenced proceedings in probate court before it went into force.    Retroactive laws, unless they impair vested rights, or create personal liabilities, are not unconstitutional. *Berry* v. *Clary*, 77 Maine, 482 ; *Coffin* v. *Rich*, 45 Maine, 507.    The use of the present or future tense of the verb in statutes does not absolutely control their application to present or future transactions.    Cases, supra.

In this act the legislature, after stating what estates should be taxed, then says in what cases it shall not apply.    Thus by exclusion or elimination making it apply to all cases except those " now pending in the probate court."

No personal liabilities are invaded here, nor are any vested rights impaired.    *Carpenter* v. *Com.* 17 How. 462, 463.

Dos Passos on Law of Collateral Inheritance, Legacy and Taxation, says on page 236 :    "The question as to whether an estate vesting and undistributed before the passage of the law becomes subject to taxation seems to be purely one of legislative intent. . . .    Acts, however, which impose a tax upon estates vesting or undistributed before such acts become operative though retroactive, are held to be constitutional."

The appellant had no vested rights in property under the devise of Mrs. Johnson until the same was irrevocably established at the period of distribution, and was therefore taxable in the hands of the executor.

If the estate does not pass to the donee until distribution and, while in the control of the court, and its appointees, taxes can

be imposed, then certainly no rights are vested in the donee; and none can be impaired by the enforcement of this law just as the intention of the legislature has provided by its application to all estates not pending in probate court, February 9th, 1893.

"Descent is a creature of the statute and not a natural right. . . . It is entirely within the province of the legislature to determine who shall and who shall not take the estate and the proportion in which they may take. . . . In the absence of constitutional prohibition, the legislature is supreme." *State* v. *Hamlin*, 86 Maine, 505.

Accordingly, the legislature must necessarily possess the power to determine, by law, in what manner the property of the individual shall descend, and of making alterations in such laws as circumstances, or the public good may require. And it is competent for the legislature to refuse to allow any property to go collaterally or to impart it under such restrictions and modifications it thinks proper, and to change these requirements and restrictions at pleasure, provided no vested rights are impaired. Id.

SITTING: PETERS, C. J., WALTON, EMERY, HASKELL, WHITEHOUSE, JJ.

WHITEHOUSE, J. The only question presented by the exceptions in this case is whether the act of the legislature which took effect on its approval, the ninth day of February, 1893, entitled, "An Act to tax collateral inheritances" (chap. 146 of the public laws of 1893) applies to property collaterally devised by a testator who died before the act took effect, but whose will was not filed in the probate court until after the act took effect.

Julia E. Johnson died in Paris, France, on the twenty-fifth day of October, 1892, leaving a will by which certain real estate in Augusta, Maine, was devised to the appellant. This will was filed in the Probate Court for Kennebec county on the fifth day of June, and admitted to probate on the fourth Monday of June, 1893.

On appeal from the Probate Court below, the presiding justice in this court ruled that the act of the legislature above specified was not intended to have and does not have a retroactive effect so as to apply to any property which passed by the will of a testator who died prior to the ninth day of February, 1893, and that the property devised to the appellant by the will of Julia E. Johnson is not subject to a tax under the act in question.

The case comes to the law court on exceptions taken to this ruling by the county attorney, that official being expressly charged in the act with the duty of "representing the interests of the state in such proceedings."

It is the opinion of the court that this ruling was correct.

It is said, indeed, in behalf of the State, that there is no constitutional inhibition against the taxation of estates undistributed, even if the act is passed subsequently to the death of the testator; and the authority of *Carpenter* v. *Com. of Penn.* 17 How. 462, is cited in support of this proposition. In that case, it was said by the court that, while it is in some sense true, that the rights of a donee under a will are vested at the death of the testator, nevertheless the rights of such a donee "are subordinate to the conditions, formalities and administrative control prescribed by the State in the interest of its public order, and are only irrevocably established upon its abdication of this control at the period of distribution; and if, during this period of administration and control by its tribunals and their appointees, the State thinks fit to impose a tax upon the property, there is no obstacle in the constitution and laws of the United States to prevent it."

But whether the act would have been obnoxious to any constitutional objection, if it had been the purpose of the legislature, unequivocally expressed in the act, to bring within the scope of its provisions all estates for the settlement of which proceedings had not been commenced in the probate court February 9, 1893, the court is not here required to determine. The facts of this case do not necessarily present an inquiry into the constitutional limitations of the act, but a question involving

the intention of the legislature respecting its operation upon the estates of those who died prior to the date of the approval.

It is undoubtedly a well-settled general rule that acts of the legislature will not be so construed as to have a retrospective operation unless the legislature has explicitly declared its intention that they should have that effect; or such intention clearly appears by necessary implication from the terms employed considered in relation to the subject matter, the present state of the law, the object sought to be accomplished, and the effect upon existing rights and obligations. *Moon* v. *Durden*, 2 Exch. 22; *Queen* v. *Guardians*, L. R. 2 Q. B. Div. 269; *Gardiner* v. *Lucas*, L. R. 3 App. Cas. 582. Indeed, this rule against retroactive laws is not only of very early origin in the English law, but was recognized as a part of the Roman law; "Leges et constitutiones futuris certum est dare formam negotiis,. non ad facta præterita revocari, nisi nominatim et de præterito tempore et adhuc pendentibus negotiis cautum sit." Codex lib. 1, tit. 14, 7. It is also declared to be the settled doctrine of the federal supreme court that, "words in a statute ought not to have a retrospective operation unless they are so clear, strong and imperative that no other meaning can be annexed to them, or unless the intention of the legislature cannot be otherwise satisfied." *Chew Hong* v. *U. S.* 112 U. S. p. 559; *U. S.* v. *Heth*, 3 Cranch, 398. And such has repeatedly been declared to be the law of this state and Massachusetts. *Bryant* v. *Merrill*, 55 Maine, 515; *Rogers* v. *Greenbush*, 58 Maine, 397; *Dyer* v. *Belfast*, 88 Maine, 140; *Gerry* v. *Stoneham*, 1 Allen, 322; *Garfield* v. *Bemis*, 2 Allen, 445; *Kinsman* v. *Cambridge*, 121 Mass. 558. See also Cooley on Const. Lim. 455; Endlich on Inter. of Stat. §§ 271, — 293, and Wade on Retroactive Laws, § 34.

It is provided in section one of the act under consideration, that "all property within the jurisdiction of this State and any interest therein whether belonging to inhabitants of this State or not,. . . . which shall pass by will or by the intestate laws of this State," &c., "shall be liable to a tax of two and a half per cent of its value, above the sum of five hundred dollars for the

use of the State," &c; and the last section provides that "this act shall not apply to any case now pending in. the probate court and shall take effect when approved."

An examination of these provisions with a careful scrutiny of all parts of the act, fails to disclose any indication of a purpose on the part of the legislature to disregard the principles of just legislation and sound public policy suggested by the rules of construction above laid down. Not only is there an entire absence of any language explicitly showing an intention to make the act retrospective, but the use of the future tense in the reference, in the first section, to the property which "shall pass by will or the intestate laws of the state" and the provision that the act shall "not apply to any case now pending in the probate court," have an unmistakable tendency to suggest that the mind of the law-maker was contemplating only the estates of decedents who should die after the act took effect. Thus the construction contended for by the State seems to receive no support from the ordinary rules of interpretation respecting the natural and obvious import of the language employed in the different provisions of the act.

Nor does a consideration of the practical consequences of a retrospective operation of the act, and of the inequalities inevitably resulting from it, render it any more probable that the legislature designed it to have such a construction. No distinction is made in the act between property which "shall pass by will" and that which "shall pass by the intestate laws of the State." If the act should be held to apply to the estates of those who died before the act took effect, for the settlement of which no proceedings had ever been instituted in the probate court, and thus subject to this tax all the property of such estates which has been inherited by collateral heirs and conveyed to innocent purchasers during the preceding twenty years, numerous titles would be disturbed, and, probably, vested rights impaired. Under such a construction of the act, questions respecting its constitutional limitations would at once be raised.

Again, the practical enforcement of the act upon the estates of those who died prior to February 9, 1893, would necessarily

result in great inequality. The liability to taxation would in many instances be determined by the fact whether proceedings for the settlement of the estate were commenced before or after February 9. The estate on which administration was pending on that day would be exempt from taxation, while the estate on which the administration might from necessity or otherwise be delayed until after that date, would be subject to taxation under this act. It is unnecessary to impute to the legislature a purpose to frame legislation which would thus have the practical effect to disturb vested rights, and create a test of liability thus dependent upon accident and chance. The provisions of the act afford abundant opportunity for the fulfillment of the legislative intention by giving it a prospective operation only, and restricting its application to the estates of those dying after the act took effect.

*Exceptions overruled.*